## BRANDON CORPORATION v. JONES, Collector of Internal Revenue.

District Court, E. D. South Carolina. March 30, 1929.

No. 2077.

Benet, Shand & McGowan, of Columbia, S. C., and James Craig Peacock, of Washington, D. C., for plaintiff.

J. D. E. Meyer, U. S. Atty., of Charleston, S. C., for defendant.

ERNEST F. COCHRAN, District Judge. Woodruff Cotton Mills (hereinafter called "the taxpayer") paid under protest to the collector income taxes which had been assessed against it amounting to $52,686.73. The taxpayer and certain other mills were consolidated into Brandon Corporation, the plaintiff, and all choses in action and property of every kind of the taxpayer became vested in the plaintiff. The plaintiff brought suit to recover the taxes in question, and amended its complaint so as to present all the facts fully, and the defendant has interposed a demurrer. It is conceded that if the demurrer is sustained, the plaintiff cannot amend further, and the complaint in that event must be dismissed. It is also conceded that if the demurrer is not sustained, the defendant has no answer to the facts and that a judgment for the plaintiff must be entered upon the pleadings, together with a certificate of probable cause for the acts of the collector pursuant to the statute.

The parties also concede that there is but a single question of law presented, and that is whether Form 1031–T, filed by the taxpayer on March 14, 1919, styled the tentative return, or Form 1120, filed June 16, 1919, styled the completed return, was the return, the filing of which started the running of the five-year statutory period of limitation on assessment and collection of additional taxes for the year 1918 (Revenue Act 1921, § 250(d), 42 Stat. 265).

The Revenue Act for 1918 was enacted on February 24, 1919 (40 Stat. 1057). Under the act, returns were to be filed by March 15, 1919, and the tax paid in quarterly installments on March 15, June 15, September 15, and December 15, 1919. The law also provided that in case an extension of time for filing the return was granted, the date for payment of the first installment should be correspondingly extended. It was evident that many taxpayers would be unable to prepare their returns by March 15. The requirements of the government, however, were such that it was advisable that the first installment should be paid by that time. In order to meet this situation, the Commissioner of Internal Revenue issued two rulings, one on February 13, 1919, and the other on February 27, 1919. In the first ruling, it was stated that no general extension of time would be authorized, but that the Commissioner had approved a novel feature of tax collection which would serve for all practical purposes as a possible extension of 45 days for the filing of the return, where the parties were unable to complete and file their return by March 15. He also announced in that ruling that if a corporation finds it impossible to complete its return in time, it might make a return of the estimated tax due and make payment thereof not later than March 15; and if a meritorious reason was shown why the corporation was unable to complete its return, the collector would accept the payment of the estimated tax and agree to accept a revised and completed tax return within a period of not more than 45 days. The ruling of February 27, 1919, contains the following pertinent clauses:

"Income taxpayers both corporation and individual, were today granted by the Internal Revenue Bureau further relief with respect to the filing of their completed tax returns for 1918. The statement that the taxpayer is unable by March 15, to execute and file the complete return will be accepted, under the new procedure, as sufficient reason for extending for forty-five days the time for filing complete income and excess profits returns, provided in every case the taxpayer pays on or before March 15, at least 25% of the estimated amount of the tax due.

"A supply of blanks of Form 1040–T, for the use of individuals as tentative return on the estimated tax basis, were shipped to each collector of Internal Revenue today. Collectors will furnish this Form to any individual requesting an extension of time for the filing of his complete return for 1918.

"The tentative return to be used by corporations who make payment of the estimated tax due on or before March 15 is being printed, and a supply will be forwarded, tomorrow to each collector, who will mail these Forms to every corporation on his list. (To be known as Form 1031–T.)

"Under the estimated tax procedure, which is now available to every taxpayer under the Income and Excess Profits Section of the new Revenue Law, there is no extension beyond the legal due date, March 15, for the payment of the taxes then falling due.

"It is urged by the Bureau that the estimates be computed on the most exact basis available. Should the first payment to be made on or before March 15, under this plan, be greater than the amount eventually found to have been due upon examination of the completed return the excess payment will be automatically credited against the next installment, which will be due June 15.

"The taxpayer will not be relieved, however, under this plan, of the interest due upon any amount by which his payment on March 15 may fall short of the amount found to have been due upon examination of the completed return."

Pursuant to these rulings, the taxpayer on March 14, 1919, filed its tentative return on Form 1031–T, together with a statement of the estimated amount of the tax accompanied by a remittance of one-fourth thereof. This form contains the statement that the form and remittance covering one-fourth of the estimated tax must reach the collector's office on or before March 15, 1919. On the duplicate, under the head of "Penalties," it is stated that there is a penalty of $1,000 for failure to make return on time. On June 16, 1919, the completed return was filed.

The government contends that inasmuch as the tentative return did not contain the information which the law provides the return shall contain, it cannot be deemed the return required by law, and amounts to nothing more than an agreement for an extension of time; and therefore the completed return must be deemed the return from the filing of which the statute begins to run. The taxpayer, however, contends that even conceding that the tentative return does not contain all of the information required by law, nevertheless it was a return for several purposes, and must therefore be deemed the return from the filing of which the statute starts to run. I am in accord with the contention of the taxpayer. The tentative return certainly cannot be construed to be merely an agreement for extension of time, and to constitute no return in any aspect. The Commissioner in his ruling of February 13, 1919, called it a "return," and in the ruling of February 27, 1919, a "tentative return." In Form 1031–T itself, it is called a tentative return. There was certainly some reason for insisting that the paper be styled a tentative return. If it was not a return at all, but merely an agreement for an extension of time, the taxpayer was not bound to pay the first installment of his taxes until he filed the completed return. It is clear, therefore, that the filing of Form 1031–T constituted such a return as to prevent the extension of time for payment of the first installment which the statute provided in all cases of an extension of time for the filing of a return. See sections 227(a) and 241(a) of the Revenue Act of 1918 (40 Stat. 1075, 1082), and section 250(a) of the same act (40 Stat. 1082).

It is common knowledge that the Revenue Act of 1918 constituted the greatest single levy of any tax in the history of the country, and that the financial condition of the government was such that it could not permit any extension of time for the collection of the first installment. It was for its own benefit largely that the government devised the plan of tentative returns. This procedure established by the Commissioner of Internal Revenue under the rulings of February 13, 1919, and February 27, 1919, expressly required therefore the filing of a return on March 15, 1919, and expressly provided that there was no extension beyond that date of the time for the payment of the first installment. The Commissioner therefore elected not to grant any extension of time for filing these returns, and it necessarily follows that the return which he then required must be deemed the return contemplated by the statute whether termed merely a tentative return or not.

But the tentative return was sufficient to constitute a return in another aspect. Section 250(e) of the same act (40 Stat. 1083) provides that if any tax remains unpaid after it is due and for 10 days after notice and demand, there should be added a penalty. Notice and demand were a condition prerequisite to the collection of the tax; but the same section provided that in the case

tic.

of the first installment, the instructions printed on the return should be deemed sufficient notice of the date when the tax is due, and sufficient demand. Form 1031–T contained instructions complying therewith, and was a sufficient notice and demand to make the first installment payable on March 15, 1919.

Moreover, the Commissioner of Internal Revenue has always considered that assessments may be properly made on such tentative returns. For examples of assessments thus made, see Matteawan Mfg. Co. v. Commissioner of Internal Revenue, 14 B. T. A. 789, and Arthur H. Lamborn et al. v. Commissioner of Internal Revenue, 13 B. T. A. 177.

Again, Form 1031–T contained an explicit statement of the penalty that would attach in case of failure to make return. The filing of this form prevented the attaching of the penalty. It must therefore be deemed a sufficient return so far as the imposition of this penalty is concerned. It is clearly therefore a return for that purpose.

There are other purposes for which the tentative return is treated as a return, but it is unnecessary to pursue the discussion further on that line.

The law clearly contemplates, so far as the starting of the statute of limitations is concerned, but one return. That return may not be complete in all particulars. It may be the subject of amendment; but if it is presented bona fide, and is a return for any purpose under the statute, then it must be a sufficient return to start the running of the statute. The government cannot blow hot and cold. It cannot say to the taxpayer, "File a paper which we know to be incomplete and does not give all the information required by law, and pay us the first installment and we will allow you later to complete your return, and readjust the amount of taxes in accordance with the completed return," and then say later that, "the first paper which you filed was no return and the statute must start from the date of the final completed return." It cannot say, when its interests require it to do so, that the tentative return is a return, and then, when its interests require the contrary, say that it is no return.

It is argued, however, that the Board of Tax Appeals has consistently held that the statute does not begin to run from the date of the filing of the tentative return, but from that of the completed return. Appeal of Dallas Brass & Copper Co., 3 B. T. A. 856, 864; Appeal of Boston Hide & Leather Co., 5 B. T. A. 617; S. Walter Kaufman v. Commissioner of Internal Revenue, 14 B. T. A. 602; Reliance Mfg. Co. v. Commissioner of Internal Revenue, 7 B. T. A. 583.

The rulings of the Board are entitled, of course, to great respect, but I am not bound by them. I have read them carefully and considered the reasoning of the Board in reaching their conclusion. But that reasoning does not seem to me convincing. It proceeds wholly upon the theory that because the tentative return does not contain the information it should contain, it must therefore be disregarded *as a return* and treated "only as a request for an extension of time." It ignores entirely the fact that the tentative return is effective as a return for certain purposes. These cases do not advert to the arguments that have been made before me that the tentative return must be deemed, and has been treated by the Board, as a return for some purposes.

My attention has also been called to the case of Florsheim Bros. Dry Goods Co. v. U. S., 29 F.(2d) 895, by the Circuit Court of Appeals, Fifth Circuit, which holds that the statutory period begins to run from the completed and not from the tentative return. This is indeed high authority, and I should hesitate ordinarily not to follow it. But it does not appear that in that case the points that have been presented in this case were presented to the court. There is certainly no suggestion in the opinion that the court considered these points. All that is said in that case is as follows: "It is suggested in argument that the statutory period of limitations began to run from the date of the tentative return in March of 1919; but we are of opinion that the return meant by the statute was the final or completed return."

I cannot but feel that if the attention of that court had been called specifically to the various cases in which the tentative return is deemed a return under the statute, the decision would have been otherwise. Although such high authority, as it is not from my own circuit, I do not feel I am absolutely bound to follow it, when my own views lead so strongly to a contrary conclusion. I am the more constrained to follow my own views, as this case will undoubtedly be appealed by one party or the other, whatever my decision may be; and as it will go up upon the pleadings, it is of no great moment which party shall carry the burden of the appeal.

It must be borne in mind also that if there is any room for doubt as to the construction or application of these taxing statutes, such doubt is to be resolved in favor of the taxpayer. Gould v. Gould, 245 U. S.

151, 38 S. Ct. 53, 62 L. Ed. 211; Bowers, Collector, v. New York & Albany Lighterage Co., 273 U. S. 346, 350, 47 S. Ct. 389, 71 L. Ed. 676.

For these reasons, an order overruling the demurrer will be entered, and the plaintiff may apply upon four days' notice for judgment upon the pleadings and a certificate of probable cause.