## APPEAL OF DALLAS BRASS & COPPER CO.

Docket No. 2629. Submitted June 5, 1925. Decided February 18, 1926.

1. Under the Revenue Act of 1918, a corporation return for income tax is a sworn statement " stating specifically the items of its gross income and the deductions and credits allowed by this title," as set forth in section 239 of said Act.

2. The so-called tentative return, Form 1031–T, as made and filed by this taxpayer, did not state any items of gross income or deductions and was not *the return* required by law.

3. The time within which the Commissioner may make an assessment or assert a deficiency of income and profits taxes under the Revenue Act of 1918 is the period of five years from and after the filing of a return made as required by that Act, and limited by section 277 of the Revenue Act of 1924.

4. The Commissioner may, in his discretion, reopen and reconsider any taxpayer's liability to income and profits taxes originally decided by him at any time within the period of the statute of limitations, subject only to the provisions of sections 1005 and 1006 of the Revenue Act of 1924.

5. Where an issue of fact respecting the proper application of section 328 of the Revenue Act of 1918 is raised by the pleadings and the Commissioner declines to respond to a subpoena to appear and produce the data upon which he acted in applying the provisions of said section 328, a continuance may be granted to permit the taxpayer to assemble and produce evidence in support of its allegations of fact.

*Frederick D. Silber* and *George S. Ward, Esqs.*, for the taxpayer. *Arthur H. Fast, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

TRUSSELL: This is an appeal from the determination of a deficiency in income and profits taxes for the year 1918 in the amount of $35,213.85. The issues presented by the pleadings are:

(1) Whether a deficiency assessment made by the Commissioner on June 13, 1924, was made within the five-year limitation prescribed by statute.

(2) Whether the same Commissioner may, after having once made an adjustment of this taxpayer's liability to income and profits taxes, thereafter, upon his own motion, reopen the case and assert an additional liability to income and profits taxes and assess the same within the period of limitations prescribed by statute.

(3) Whether, after having reopened the case, the Commissioner, in applying the provisions of section 328 of the Revenue Act of 1918, used improper and unfair comparatives, with the result that the asserted deficiency is excessive, unjust, and inequitable, and imposes upon this taxpayer a rate of tax in excess of that paid by others similarly circumstanced.

Prior to the date set for the hearing of this appeal the taxpayer, through its counsel, applied for and there was issued a subpœna requiring the Commissioner to appear at the hearing of the appeal and to bring with him and produce the returns of the corporations with which he compared this taxpayer, and such other information and data as was used by him pursuant to section 328(a) of the Revenue Act of 1918 in computing the deficiency herein complained of. At the hearing, the Commissioner's counsel announced that the Commissioner acknowledged the receipt of the subpœna but declined to furnish the returns or any other data or information in respect thereto, basing his action upon section 3167 of the United States Revised Statutes, as amended.

Thereupon, counsel for the taxpayer introduced into the record the several Commissioner's letters, which are herein recited, and argued the questions of law concerning the running of the statute of limitations and reopening of tax cases, and at the close of the oral argument the Division of the Board announced that, in the event the decision of the Board should be unfavorable to the taxpayer upon the issues of law presented, the taxpayer would be allowed a period of 30 days within which to move for such further proceedings in connection with this appeal as might be deemed appropriate and necessary.

The taxpayer is an Illinois corporation with its principal place of business in Chicago, where it is engaged in the business of manufacturing brass and copper and articles of merchandise made from said materials, and dealing in the same, as well as in similar prod-

ucts manufactured by others. During the calendar year 1918, the taxpayer's business produced a net income, as shown by its books, in the amount of $266,940.74, upon which its income and profits tax liability, computed in accordance with the provisions of sections 230 and 301 of the Revenue Act of 1918, aggregated $181,297.03.

Under date of February 13, 1919, the Commissioner caused announcement to be made through the public press of a plan under which taxpayers who would be called upon to make income and profits-tax returns under the Revenue Act of 1918, which had not then been enacted, would be enabled to have the benefit of an extension of time within which to file completed returns. A part of such authorized publication and notice was as follows:

*To collectors of internal revenue and others concerned:*

Although no general extension of time will be authorized for filing Federal Income Tax returns due March 15, the Commissioner of Internal Revenue has approved a novel feature of tax collection which will serve for all practical purposes as a possible extension of forty-five days for the filing of corporation income and excess profits tax returns in cases where corporations are unable to complete and file their returns on March 15.

If a corporation finds that, for good and sufficient reason, it is impossible to complete its return by March 15, it may make a return of the estimated tax due and make payment thereof not later than March 15. If meritorious reason is shown as to why the corporation is unable to complete its return by the specified date, the collector will accept the payment of the estimated tax and agree to accept the revised and completed tax return within a period of not more than 45 days.

Again, under date of February 27, 1919, three days after the approval of the Revenue Act of 1918, the Commissioner caused to be published in the public press and otherwise, for the information of taxpayers, further announcement concerning extensions of time within which to file income and profits tax returns, a part of which published notice is as follows:

Income taxpayers, both corporation and individual, were today granted by the Internal Revenue Bureau further relief with respect to the filing of their completed tax returns for 1918. The statement that the taxpayer is unable by March 15, to execute and file the complete return will be accepted. under the new procedure, as sufficient reason for extending for forty-five days the time for filing complete income and excess profits returns, provided in every case the taxpayer pays on or before March 15 at least 25 per cent of the estimated amount of the tax due.

＊　　＊　　＊　　＊　　＊　　＊　　＊

The tentative return to be used by corporations who make payment of the estimated tax due on or before March 15 is being printed, and a supply will be forwarded tomorrow to each collector, who will mail these Forms to every corporation on his list (to be known as Form 1031-T).

On or about April 14, 1919, the Commissioner issued his mimeographed letter No. 2101, addressed to collectors of internal revenue,

and published in the public press for the information of taxpayers, the relevant portion of which is as follows:

In the case of corporations which filed Form 1031-T on or before March 15, a further extension, where needed, to June 15, 1919, in which to file complete returns on Form 1120 is hereby granted, but all such corporations will be required to pay on or before June 15 a sum sufficient, with the amount paid on March 15, to equal one-half the tax due as shown by the return on Form 1120, together with interest at the rate of one-half of 1% per month on any deficiency in the first installment.

On March 12, 1919, the taxpayer filed with the collector of internal revenue at Chicago a so-called *tentative* return on Form 1031–T, and on that day paid to the collector the sum of $32,619.99, representing that said amount was one-fourth of 50 per cent of the total amount of the net income and was then paid pursuant to section 328(b) of the Revenue Act of 1918. Securely affixed to the form is a typewritten slip in words and figures as follows:

Said taxpayer, Dallas Brass & Copper Co., hereby gives notice to the Collector of Internal Revenue that it intends to make application to the Commissioner to apply the benefit of sections 327 and 328 of the Revenue Act of 1918, in force February, 1919, to the computation of the proper tax to be paid by this corporation, and in accordance with section 328, paragraph " B," pays the Collector herewith the sum of Thirty-two thousand, six hundred nineteen and $\frac{99}{100}$ Dollars ($32,619.99), said installment being computed upon the basis of a tax equal to fifty per cent of the net income of said Dallas Brass & Copper Co. for the year ending December 31, 1918.

This form was signed by the president of the taxpayer corporation, acknowledged before a notary, and filed in the collector's office at Chicago on March 12, 1919.

Thereafter, the taxpayer procured the department Form 1120, " corporation income and profits tax return for calendar year 1918," and caused such form to be prepared in the manner apparently indicated by the form and the instructions contained thereon, showing that the net taxable income was $266,940.74, and the tax computations carried out in the manner indicated by the form show—

| | |
|---|---:|
| Total excess and war profits taxes | $170,165.95 |
| Income tax | 11,131.08 |
| Total tax liability | 181,297.03 |

This form was signed by the president of the corporation, sworn to before a notary on June 13, 1919, and filed in the office of the collector of internal revenue at Chicago on June 13, 1919, and there is a notation on the form that a remittance accompanied it in the amount of $39,680.73.

Thereupon, the taxpayer made an application for relief, accompanied by claim for abatement, under sections 327 and 328 of the Revenue Act of 1918, and the Commissioner, under date of Febru-

ary 10, 1921, granted an abatement of tax in the amount of $27,-828.98. The taxpayer then made application for further special relief, in response to which, after a number of conferences, the Commissioner, under date of September 14, 1922, allowed a further reduction of assessment in the amount of $51,239.16, and forwarded to the taxpayer a letter setting forth such findings, in words and figures as follows, in so far as the said letter related to the calendar year 1918:

| | | |
|---|---|---|
| Net income as returned | | $266, 940.74 |
| Add: | | |
| Expenses | $2, 039. 00 | |
| Interest | 489. 46 | |
| | 2, 528. 46 | |
| Less: | | |
| Cost of goods | $1, 182. 66 | |
| Depreciation | 0. 15 | |
| | 1, 182. 81 | |
| | | 1, 345. 65 |
| Corrected net income | | 268, 286. 39 |

COMPUTATION OF TAX.

| | | |
|---|---|---|
| Profits tax (section 328) | | 80, 132. 29 |
| Net income | $268, 286. 39 | |
| Interest on U. S. obligations not exempt | $2, 015. 77 | |
| Profits tax | 80, 132. 29 | |
| Exemption | 2, 000. 00 | |
| | 84, 148. 06 | |
| Balance subject to tax at 12 per cent | 184, 138. 33 | 22, 096. 60 |
| Total tax assessable | | 102, 228. 89 |
| Original tax assessed | $181, 297. 03 | |
| Less: Amount abated Feb. 10, 1921 | 27, 828. 98 | |
| | 153, 468. 05 | |
| Indicating an overassessment of | | 51, 239. 16 |

The overassessments shown herein will be made the subject of certificates of overassessments which will reach you in due course through the office of the Collector of Internal Revenue for your district and will be applied by that official in accordance with section 252 of the Revenue Act of 1921.

Respectfully,

E. H. BATSON,
*Deputy Commissioner.*

Here the subject of this taxpayer's liability to income and profits taxes for the year 1918 appears to have rested until, on or about June 12, 1924, the Commissioner caused to be prepared and forwarded to the taxpayer a letter as follows:

IT : E : SM
LTM–A–2351

JUNE 12, 1924.

THE DALLAS BRASS AND COPPER COMPANY,
    *223–231 North Jefferson Street,*
        *Chicago, Ill.*

SIRS : Reference is made to your income and profits tax return, Form 1120, for the calendar year 1918, and to Bureau letter dated September 14, 1922, in which you were advised of an overassessment amounting to $51,239.16, determined as a result of computing your tax liability under the provisions of section 328 of the Revenue Act of 1918.

A reexamination has been made of your application for assessment of your profits taxes under the relief provisions of the Revenue Act of 1918, together with all other evidence in the case, and you are advised that the above-mentioned determination of your tax liability was erroneous. A correct computation of your tax liability under section 328 of the Revenue Act of 1918 has been made and the additional assessment, $35,213.85, necessary to correct the excessive overassessments erroneously determined will be listed immediately in accordance with the provisions of section 274 (d) of the Revenue Act of 1924, without giving the sixty days' notice as provided in section 274 (a) of the same act.

The Bureau, therefore, will entertain a claim in abatement if filed within ten days of receipt of notice and demand from the Collector of Internal Revenue for your district, in accordance with the provisions of section 279 of the above-mentioned Revenue Act. An appeal covering the basis of the claim should be filed, setting forth in full all information upon which you base your protest against the above assessment and any additional facts in support of your claim for the application of the relief provisions of the Revenue Act of 1918. This appeal should be filed in triplicate and should be addressed to the Commissioner of Internal Revenue for the specific attention of IT : E : SM–LTM–A–2351. On request a conference will be arranged prior to final decision.

If an appeal is not filed, payment should be made upon receipt of notice and demand from the Collector of Internal Revenue for your district.

    Respectfully,

                                  Deputy Commissioner.

STATEMENT

IT : E : SM
LTM–A–2351

JUNE 12, 1924.

In re : The Dallas Brass and Copper Company, 223–231 North Jefferson
        Street, Chicago, Illinois.

1918

| | | |
|---|---|---|
| Additional tax | | $35,213.85 |
| Profits tax (328) | | $120,148.03 |
| Net income | | $268,286.39 |
| Less : | | |
|     Interest on obligations of U. S. not | | |
|       exempt | $2,015.77 | |
|     Profits tax | 120,148.03 | |
|     Exemption | 2,000.00 | |
| | | 124,163.80 |
| Subject to tax at 12% | | $144,122.59 |

Amount of tax at 12%_____ $17,294.71

Total tax assessable_____ $137,442.74
Previously assessed:
    Original return_____ $181,297.03
    Less: Overassessments—
        1921_____ $27,828.98
        1922_____ 51,239.16
                                     79,068.14
                                                     102,228.89

Additional tax_____ $35,213.85

On June 13, 1924, the Commissioner caused to be made and entered upon an assessment list a deficiency assessment against this taxpayer in the amount of $35,213.85. Thereupon the taxpayer filed with the Commissioner a protest against said additional assessment and a claim in abatement of all of such assessment, which claim in abatement the Commissioner received, considered, and reviewed, and finally rejected, and he forwarded to the taxpayer a notice of such rejection dated February 6, 1925, in words and figures as follows:

TREASURY DEPARTMENT,
Office of Commissioner of Internal Revenue,
*Washington, February 6, 1925.*

IT:E:SM
CDL-A-2351
The DALLAS BRASS AND COPPER COMPANY,
   223-231 North Jefferson Street,
       *Chicago, Illinois.*

SIRS: Reference is made to your income and profits tax return for the calendar year 1918 and to your protest dated July 19, 1924, and additional information subsequently submitted.

You are advised that after a thorough review of your case, the Bureau holds that the Commissioner of Internal Revenue may assess any tax found to be due even though such tax may have been previously erroneously abated or refunded, provided that such assessment is made within the time prescribed by statute; that the additional assessment of $35,213.85 against your corporation for the taxable year 1918 was made within the time prescribed by statute; and that the comparatives used in the final determination are, in the aggregate, fairly representative in all the material particulars specified in the act. The conclusions set forth in Bureau letter dated June 12, 1924 are, therefore, sustained.

In accordance with the above conclusions, your claims for the abatement of $35,213.85 and refund of $153,468.05, aggregating $188,681.90, will be rejected.

The Collector of Internal Revenue for your district will notify you as to the time and manner of making payment.

Upon receipt of notice and demand from that official, payment should be made to his office, in accordance with the conditions of his notice.

Your case is, therefore, deemed closed by the Bureau.

   Respectfully,
                        (Signed)     J. G. BRIGHT,
                                 *Deputy Commissioner.*

From above notice of rejection of claim the taxpayer filed this. appeal on March 18, 1925.

The granting of extensions of time within which taxpayers must file the returns required by law, and which are to be the basis for the computation and assessment of internal-revenue taxes, was pro-. vided for by statute many years prior to the levying of taxes upon incomes under the Sixteenth Amendment to the Constitution. Section 3176 of the Revised Statutes has for many years contained a provision for the granting of extensions of time within which to file returns on account of the absence or illness of taxpayers.

With the advent of income tax legislation, it was recognized that there are sometimes reasons, other than absence and illness, which require extensions of time within which to file returns. This was first recognized in the Revenue Act of 1916, section 8, which made . provision for persons residing or traveling abroad, and later, in the Revenue Act of 1918, section 227(a), which contains the following language:

* * * The Commissioner may grant a reasonable extension of time for filing returns whenever in his judgment good cause exists * * *.

This Act was approved on February 24, 1919, but was specifically made effective as of January 1, 1918. The returns for the year 1918 were required to be made and filed with the proper collector of internal revenue on or before March 15, 1919, which was only 19 days after the approval of the Act.

Some time prior to March 12, 1919, the Commissioner caused notice to be given " through the public press and otherwise that tentative returns (Forms 1031–T and 1040–T), accompanied by a first installment of one-fourth of the estimated tax due, would be accepted on that date [March 15, 1919] and that in such cases forty-five days would be given in which to file complete returns," and at the same time the Commissioner issued and caused to be distributed in such a manner as to be available for the use of taxpayers the said so-called tentative return forms. Form 1031–T is in the nature of a communication addressed by the taxpayer to the collector and contains. the following language:

The amount stated below is remitted herewith in payment of not less than. one-fourth of the estimated amount of the income, war-profits, and excess-profits taxes for the year ended —— of the corporation whose name and address appear at the head of this form.

An extension of —— days in the time allowed for filing a completed return is requested.

It is not possible to file a completed return on or before March 15, 1919, for the following reasons:

On or about March 12, 1919, the taxpayer made use of one of these. forms, in the proper blank spaces of which it filled in the taxpayer's.

name and address; showed that the form was used in connection with the year ended December 31, 1918; and, in the space for entering the estimated one-fourth of the amount of tax due, entered the figures $32,619.99, and filed this form, signed and sworn to, with the collector of internal revenue at Chicago, accompanied by a remittance for the amount stated in the form. Later, on June 13, 1919, the taxpayer filed a complete return with the collector at Chicago.

The taxpayer now argues that the Revenue Act of 1918 required it to file with the collector *one* return; that the Act itself contains no provision or mention of any tentative return or complete return, and that, therefore, when the taxpayer filed the above-mentioned tentative return, it had complied with the provisions of the statute requiring it to file a return and that the statute of limitations contained in the Revenue Act of 1924, section 277(a) (2), providing that taxes under various prior revenue laws "shall be assessed within five years after *the return* was filed," began to run on the day following the filing of the so-called tentative return.

The Revenue Act of 1918, section 239, contains this provision:

> That every corporation subject to taxation under this title and every personal service corporation shall make a return, *stating specifically the items of its gross income and the deductions and credits allowed by this title*. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer or assistant treasurer.

The return required by the statute is a document prepared in such a manner as to set forth the information called for in the above quotation from section 239 of the Revenue Act of 1918. The form filed by the taxpayer on March 12, 1919, contained none of the information required by section 239, above quoted. We must, therefore, treat this tentative return only as a request for an extension of time within which to file the return, accompanied by a statement that the taxpayer complied with the Commissioner's requirement of making a payment of one-fourth of the amount of tax estimated to be due, and that this taxpayer, having availed itself of the extension offered by the Commissioner to it and all other taxpayers in similar circumstances, can not now, with any degree of propriety, claim that the simple form used by it, containing none of the information required by the statute, was a return which could start the running of the statute of limitations.

We are, therefore, of the opinion that the form of tentative return used by this taxpayer and filed with the collector on March 12, 1919, was not a return required by the statute; that the return prepared and filed with the collector on June 13, 1919, was *the return* required by statute; and that the five-year period of limitation within which assessment might be made began to run on the day following June 13, 1919.

The taxpayer further argues that in the event the Board shall find that the assessment of June 13, 1924, was not barred by the statute of limitations, the Commissioner is nevertheless without authority to make an assessment or assert a deficiency as of that date, for the reason that he had, prior to that time, fully considered and acted upon all the facts pertinent to the subject of the taxpayer's liability to income and profits taxes for the year 1918 and had made a final adjustment of such liability, and that the case was closed and could not be reopened. The record of this appeal shows that the return filed by the taxpayer on June 13, 1919, disclosed the tax liability of $181,297.03; that an application for relief under sections 327 and 328 was made and was considered by the Commissioner; and that on February 10, 1921, an abatement of the amount assessed upon the return was made in the sum of $27,828.98, reducing the tax liability to $153,468.05. This last amount apparently was fully paid by the taxpayer, but thereafter the taxpayer made application for still further relief under section 328 of the Revenue Act of 1918. This second relief application was considered by the Commissioner and on or about September 14, 1922, the Commissioner granted to the taxpayer a further reduction of tax liability and advised the taxpayer of his action in a communication included in the above findings of fact.

This adjustment of tax liability appears to have been followed by a refund and payment to the taxpayer of an amount equal to the overassessment last above shown, and there the matter rested until on or about June 12, 1924, when the Commissioner caused to be forwarded to the taxpayer a communication, in words and figures as set forth in the findings of fact, in which the Commissioner asserted a deficiency in tax for the year 1918 in the amount of $35,213.85, and on the following day, June 13, 1924, the Commissioner caused to be entered on the appropriate list an assessment against the taxpayer in the amount last above stated.

The taxpayer now contends that the Commissioner's actions on June 12 and 13, 1924, in reopening and reconsidering the taxpayer's liability to income and profits taxes for the year 1918, were unauthorized, and that the Commissioner had no power at that time either to assert or assess an alleged deficiency in tax; that, by virtue of having on or about September 14, 1922, arrived at a determination of tax liability and adjustment of the same satisfactorily to the taxpayer, the Commissioner had divested himself of power to take any further action in the matter.

In support of this contention the taxpayer cites, as an authority for our consideration, the case of *Penrose* v. *Skinner*, 278 Fed. 284, where the court, among other things, said:

No authority has been vested in a Commissioner to overrule and reverse the action of his predecessor in office. Commissioner Osborn, acting under his authority, heard and determined a question of fact necessary to enable him to act intelligently in ascertaining and determining the amount of plaintiff's net income on which he would be required to make the levy and assessment, and his finding on that issue not having been impeached by the answer should, under every principle and rule of law, be regarded here as final.

In support of this view, numerous decisions of both the Supreme Court and other Federal courts were cited in that opinion. These precedents are urged as establishing the principle that the acts of one Commissioner, acting with full knowledge of all the facts, may not be reversed by his successor. A wholly different situation, however, exists in the matter of the instant appeal. David H. Blair was the Commissioner when all the acts and proceedings here in question were done, and we are of the opinion that Commissioner Blair at all times possessed full authority to review his own official acts.

It has long been recognized, both by the Commissioner and all of his predecessors, as well as taxpayers generally, that reconsiderations of liability to internal-revenue taxes were both proper and lawful. This taxpayer itself recognized this principle when, after having received an abatement of $27,828.98 of its originally computed tax liability, it again applied to the same Commissioner for a further reduction of such tax liability. The principle or rule of law to the effect that reconsiderations and adjustments of tax liability can be properly made seems to have been recognized by Congress when, in the Revenue Act of 1921, it enacted:

That no taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary. (Revenue Act of 1921, section 1309.)

Such recognition on the part of Congress is still further evidenced by this enactment:

That if after a determination and assessment in any case the taxpayer has without protest paid in whole any tax or penalty, or accepted any abatement, credit, or refund based on such determination and assessment, and an agreement is made in writing between the taxpayer and the Commissioner, with the approval of the Secretary, that such determination and assessment shall be final and conclusive, then (except upon a showing of fraud or malfeasance or misrepresentation of fact materially affecting the determination or assessment thus made) (1) the case shall not be reopened or the determination and assessment modified by any officer, employee, or agent of the United States, and (2) no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States. (Revenue Act of 1921, section 1312.)

Similar provisions were reenacted in sections 1005 and 1006 of the Revenue Act of 1924.

The Revenue Act of 1921, containing section 1312, above quoted, was in force at the time the adjustment of this taxpayer's case was made in September, 1922, and the taxpayer then had the opportunity of applying to the Commissioner for an agreement making such adjustment a final settlement, which could not be thereafter disturbed, but no such agreement appears to have been either asked for or made. We are, therefore, of the opinion that on June 12 and 13, 1924, the law fully authorized the Commissioner, at his discretion, to reopen the consideration of the taxpayer's liability for taxes for the year 1918, and that his action in so doing can not be either set aside or disregarded by this Board.

The third assignment of error in the taxpayer's petition is as follows:

That improper and unfair comparatives were used in the redetermination, with the result that the deficiency is excessive, unjust and unequitable, and imposes upon this taxpayer a rate of tax greatly in excess of that paid by others similarly situated in the same industry.

In the allegations of facts the petition recites—

* * * This taxpayer, however, while standing upon its legal position that the Commissioner had no power to reopen the case, adopts as its own and elects to stand upon the comparatives used by the Commissioner in his determination made in 1922, and asserts and alleges that such comparatives are fair, just, equitable, and in accordance with the special relief provision of the statute, and that the tax computed with such comparatives as a basis was just, fair, equitable and in proportion to the taxes paid by other concerns similarly situated in the same industry.

These allegations are denied by the Commissioner's answer, and there is thus presented the only controverted issue of fact involved in this appeal.

Prior to the date of hearing the taxpayer had procured and served upon the Commissioner a subpoena, requiring him to appear before the Board to testify and furnish the data upon which he based his assertion of the deficiency complained of. In pursuance of the regular policy in such matters, the Commissioner declined to respond to the subpoena, and the taxpayer was thus left unprepared to support the allegations of fact contained in its petition. The Division hearing this appeal announced that, in the event the Board decided the questions of law argued adversely to the taxpayer, the taxpayer might, within thirty days after such decision, move for such further proceedings in this appeal as shall be deemed appropriate.

The taxpayer will, therefore, be accorded the period of thirty days following the promulgation of this opinion within which to move for such further appropriate proceedings as are deemed necessary to the determination of whether the deficiency determined by the

Commissioner is in accord with the provisions of section 328 of the Revenue Act of 1918.

If, however, the taxpayer fails to move within a period of thirty days for further proceedings in the matter of this appeal, the appeal may, upon motion and due notice, be dismissed.

On reference to the Board, GREEN did not participate.