**WHITE, Collector of Internal Revenue, v. HOOD RUBBER CO.**

Circuit Court of Appeals, First Circuit.
June 25, 1929.

No. 2338.

Wright Matthews, Sp. Atty., Bureau of Internal Revenue, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C. (Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. U. S. Atty., both of Boston, Mass., on the brief), for appellant.

Harold C. Haskell, of Watertown, Mass. (Charles C. Gammons, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, Circuit Judge, and MORRIS and BREWSTER, District Judges.

BINGHAM, Circuit Judge. This is a suit brought by the Hood Rubber Company, appellee, in the federal District Court for Massachusetts, to recover $39,043.99, the amount of an additional income and excess profits tax for the year 1918, which was collected by distraint on December 15, 1926. By stipulation in writing the case was tried before the court without a jury.

The plaintiff, appellee, on March 14, 1919, filed its income and excess profits tax return for the calendar year 1918, in which it estimated its tax at $300,000. This return was made on a form prescribed and furnished by the Treasury Department, known as "Form 1031–T" and designated as a "tentative return." At the time of filing this return the plaintiff paid one-quarter ($75,000) of the tax as shown by its return. And June 16, 1919, upon the demand of the collector, it paid as a second installment of the tax the further sum of $75,000. July 14, 1919, the plaintiff filed a completed, revised, or amended return, showing its total tax for the calendar year 1918 to be $169,772.65, and on December 12, 1919, paid the balance of the tax, $19,772.65, as shown by this completed or amended return. January 26, 1924, while the Revenue Act of 1921 was in force, the plaintiff and the Commissioner of Internal Revenue entered into a written agreement, authorized by section 250(d) of the Revenue Act of 1921 (42 Stat. 264), extending the statutory period of limitation (five years) an additional period of one year, in which to determine, assess, and collect the amount of income and excess profits taxes due under any return made by the plaintiff for the year 1918 under the Revenue Act of 1921, or under prior income and excess profits acts.

Thereafter the Commissioner determined that an additional tax for the year 1918 was due, and on March 18, 1925, after the Revenue Act of 1924 was enacted (43 Stat. 253), assessed an additional tax against the plaintiff, which amounted to $39,043.99, after making certain deductions and allowance of credits. On December 15, 1926, a collection of this tax was had by distraint. A claim for refund was duly filed and rejected, and on January 12, 1928, this suit was brought.

In the District Court it was held that, if the word "return," as used in section 250(d) of the act of 1921, meant the tentative return, the government did not assess the tax in time; but, if it meant the return of July 14, 1919, the assessment was made within the required five years plus the additional year provided for in the waiver agreement. It said, however, that the question need not be decided, for if it be granted that the completed or amended return fixed the time from which to reckon, and the assessment was seasonably made, the tax was not collected either within five or within six years from the filing of the completed return; that the government, having taken advantage of the six-

year period for assessment, could not say that the six-year period for collection was changed by the subsequent act of 1924, which allowed six years after the assessment for collection; that either the agreement of waiver conferred no power on the government to make the assessment later than the statutory period allowed (five years), or the agreement applied to the time fixed for the collection as well as the assessment; that it was to the advantage of both parties that the period of limitation should be extended—of advantage to the government'for the reason that, at the time the agreement of waiver was made, the statutory limitation of five years had nearly expired, and of advantage to the plaintiff to know when the tax would become unenforceable, so that it might properly arrange its financial affairs. And, such being the case, the agreement of waiver constituted a binding contract, which Congress did not intend to have affected by the provisions of the act of 1924. Chicago & N. W. R. Co. v. United States, 104 U. S. 680, 26 L. Ed. 891. Having reached this conclusion, the court entered judgment for the plaintiff in the sum of $39,043.99, with interest amounting to $4,-568.15, and cost of suit. It is from this judgment that this appeal is taken.

For reasons that will later appear, we do not find it necessary to consider whether the ground upon which the court below reached its conclusion was right or not.

■ The first question presented is whether the return filed March 14, 1919 is the one from which the five-year period of limitation (fixed by the Revenue Acts of 1918 and 1921 [40 Stat. 1057; 42 Stat. 227]), as extended by the waiver agreement of January 26, 1924, for one year, under the authority of the act of 1921, or whether the revised or amended return is the one from which the period of limitation is to be reckoned; for, if the former is the one, the additional tax of March 18, 1925, was not seasonably assessed.

There are apparently three cases in which this question has been under consideration in the federal courts. Florsheim Bros. Dry Goods Co., Limited, v. United States, 29 F. (2d) 895, 896 (5th Cir. Ct. of App.), decided December 19, 1928; Rasmussen v. Brownfield-Canty Carpet Co., 31 F.(2d) 89, 91 (9th Cir. Ct. of App.), decided February 11, 1929; and Brandon Corp. v. Jones, Collector, 33 F.(2d) 969, decided March 30, 1929 (Eastern Dist. of So. Car.).

In the first case no discussion of the question was had. All that was said concerning the matter was: "It is suggested in argument that the statutory period of limitations began to run from the date of the tentative return in March of 1919; but we are of opinion that the return meant by the statute was the final or completed return."

In the second case Judge Gilbert pointed out that the Board of Tax Appeals had entertained contrary views, and he took the position that the original or tentative return, and not the completed or amended one, fixed the date for the beginning of the running of the statutes of limitation as outlined in section 250(d) of the act of 1921; but his associates refrained from expressing an opinion upon the question, as the distraint proceedings there in question were barred, whether the period of limitation began to run from the filing of the tentative return or of the completed or amended one.

In the third case the facts and circumstances attending the filing of the so-called tentative return (Form 1031-T, prescribed by the Commissioner of Internal Revenue) were presented and considered, and it was held that the period of limitation began to run from the filing of the original or tentative return, and not from the filing of the completed or amended return. It was there said:

"The Revenue Act for 1918 was enacted on February 24, 1919. Under the act, returns were to be filed by March 15, 1919, and the tax paid in quarterly installments on March 15, June 15, September 15, and December 15, 1919. The law also provided that in case an extension of time for filing the return was granted, the date for payment of the first installment should be correspondingly extended [section 250(a)]. It was evident that many taxpayers would be unable to prepare their returns by March 15. The requirements of the government, however, were such that it was advisable that the first installment should be paid by him by that time. In order to meet this situation, the Commissioner of Internal Revenue issued two rulings, one on February 13, 1919, and the other on February 27, 1919. In the first ruling, it was stated that no general extension of time would be authorized, but that the Commissioner had approved a novel feature of tax collection which would serve for all practical purposes as a possible extension of 45 days for the filing of the return, where the parties were unable to complete and file their returns by March 15. * * * He also announced in that ruling that if a corporation finds it impossible to complete its return in time, it might make a return of the estimated tax due and make payment thereof not later than March 15; and if a meritorious reason was

shown why the corporation was unable to complete its return, the collector would accept the payment of the estimated tax and agree to accept a revised and completed tax return within a period of not more than forty-five days. The ruling of February 27, 1919, contains the following pertinent clauses:

" 'Income tax payers, both corporation and individual, were to-day granted by the Internal Revenue Bureau further relief with respect to the filing of their completed tax returns for 1918. The statement that the taxpayer is unable by March 15, to execute and file the complete return will be accepted, under the new procedure, as sufficient reason for extending for 45 days the time for filing complete income and excess profits returns, provided in every case the taxpayer pays on or before March 15, at least 25% of the estimated amount of the tax due.

" 'A supply of blanks of Form 1040-T, for the use of individuals as tentative return on the estimated tax basis, were shipped to each collector of internal revenue to-day. Collectors will furnish this form to any individual requesting an extension of time for the filing of this complete return for 1918.

" 'The tentative return to be used by corporations who make payment of the estimated tax due on or before March 15 is being printed, and a supply will be forwarded to-morrow to each collector, who will mail these forms to every corporation on his list. (To be known as Form 1031-T.)

" 'Under the estimated tax procedure, which is now available to every taxpayer under the income and excess profits section of the new Revenue Law [40 Stat. 1057], there is no extension beyond the legal due date, March 15, for the payment of the taxes then falling due.

" 'It is urged by the Bureau that the estimates be computed on the most exact basis available. Should the first payment to be made on or before March 15, under this plan, be greater than the amount eventually found to have been due upon examination of the completed return the excess payment will be automatically credited against the next installment, which will be due June 15.

" 'The taxpayer will not be relieved, however, under this plan, of the interest due upon any amount by which his payment on March 15 may fall short of the amount found to have been due upon examination of the completed return.' * * *

"Pursuant to these rulings, the taxpaper on March 14, 1919, filed its tentative return on Form 1031-T together with a statement of the estimated amount of the tax accompanied by a remittance of one-fourth thereof. This form contains the statement that the form and remittance covering one-fourth of the estimated tax must reach the collector's office on or before March 15, 1919. On the duplicate under the head of 'Penalties' it is stated that there is a penalty of $1000 for failure to make return on time. On June 16, 1919, the completed return was filed."

After stating the respective contentions of the parties—that of the government, that the tentative return did not contain the information which the law required and amounted to nothing more than an agreement for an extension of time; and that of the taxpayer, that conceding that the tentative return did not contain all the information required by law, nevertheless it was a return for several purposes and must therefore be deemed a return from the filing of which the statute starts to run—the opinion continues:

"The tentative return certainly cannot be construed to be merely an agreement for extension of time, and to constitute no return in any aspect. The Commissioner in his ruling of February 13, 1919, called it a 'return' and in the ruling of February 27, 1919, a 'tentative return.' In Form 1031-T itself, it is called a tentative return. There was certainly some reason for insisting that the paper be styled a tentative return. If it was not a return at all, but merely an agreement for an extension of time, the taxpayer was not bound to pay the first installment of his taxes until he filed the completed return. It is clear, therefore, that the filing of Form 1031-T constituted such a return as to prevent the extension of time for payment of the first installment which the statute provided in all cases of an extension of time for the filing of a return. See sections 227(a) and 241(a) of the Revenue Act of 1918 (40 Stat. 1075, 1082), and section 250(a) of the same act (40 Stat. 1082).

"It is common knowledge that the Revenue Act of 1918 constituted the greatest single levy of any tax in the history of the country, and that the financial condition of the government was such that it could not permit any extension of time for the collection of the first installment. It was for its own benefit largely that the government devised the plan of tentative returns. This procedure established by the Commissioner of Internal Revenue under the Rulings of February 13, 1919, and February 27, 1919, expressly required therefore the filing of a return on March 15,

1919, and expressly provided that there was no extension beyond that date of the time for the payment of the first installment. The Commissioner therefore elected not to grant any extension of time for filing these returns, and it necessarily follows that the return which he then required, must be deemed the return contemplated by the statute whether termed merely a tentative return or not.

"But the tentative return was sufficient to constitute a return in another aspect. Section 250(e) of the same act (40 Stat. 1083) provides that if any tax remains unpaid after it is due and for 10 days after notice and demand, there should be added a penalty. Notice and demand were a condition prerequisite to the collection of the tax; but the same section provided that in the case of the first installment, the instructions printed on the return should be deemed sufficient notice of the date when the tax is due, and sufficient demand. Form 1031-T contained instructions complying therewith, and was a sufficient notice and demand to make the first installment payable on March 15, 1919. * * *

"Again, Form 1031-T contained an explicit statement of the penalty that would attach in case of failure to make return. The filing of this form prevented the attaching of the penalty. It must, therefore, be deemed a sufficient return so far as the imposition of this penalty is concerned. It is clearly therefore a return for that purpose. * * *

"The law clearly contemplates, so far as the starting of the statute of limitation is concerned, but one return. That return may not be complete in all particulars. It may be the subject of amendment; but if it is presented bona fide, and is a return for any purpose under the statute, then it must be a sufficient return to start the running of the statute. The government cannot blow hot and cold. It cannot say to the taxpayer, 'File a paper which we know to be incomplete and does not give all the information required by law, and pay us the first installment and we will allow you later to complete your returns, and readjust the amount of taxes in accordance with the completed return,' and then say later, that 'the first paper which you filed was no return and the statute must start from the date of the final completed return.' It cannot say, when its interests require it to do so, that the tentative return is a return and then when its interests require the contrary, say that it is no return."

There are also decisions involving questions of like import, where the original return was incomplete in certain respects, and it was held that the supplemental return operated as an amendment of and related back to the original return, which fixed the time for reckoning the period of limitation. Thomas v. United States (D. C.) 22 F.(2d) 1000; United States v. Mabel Elevator Co. (D. C.) 17 F. (2d) 109.

The original or tentative return filed in this case disclosed a tax of $300,000, based on the best information then available—a tax in fact much larger than was the tax actually due. It was made on the form and in the manner required by the Commissioner and was the only return that could then have reasonably been made. It did not extend the time for payment of the tax disclosed, for the taxpayer was required to pay and did pay the first installment of $75,000 on the filing of the return, when under the law it was mandatory that payment of the first installment of the tax should be extended, if it was not the return required, but the mere grant of an extension of time for filing a return. It was the return that put the tax statute into operation as respects the payment of the particular tax, and caused the penalty feature of the law to become operative in case the taxpayer failed to pay at the appointed time. And the logical conclusion is that it was the return that also put the statutory period of limitation into operation; and we so hold.

The Commissioner unquestionably had authority to inaugurate and require the tentative return method of collecting the tax and the presumption is that he did so in conformity with law. Updike v. United States (C. C. A.) 8 F.(2d) 913; sections 1305 and 1309 of the Revenue Act of 1918 (40 Stat. 1142, 1143); and sections 1300 and 1303 of the Revenue Act of 1921 (42 Stat. 308, 309 [26 USCA §§ 1244, 1254]). As the time for assessing and collecting the additional tax expired March 14, 1925, before the tax was assessed or collected, the assessment and collection was unauthorized, and the judgment of the court below must be affirmed.

The judgment of the District Court is affirmed, with costs to appellee in this court.