Estate of Anna A. Lohman, Deceased, Manufacturers Hanover Trust Company and Genevieve R. F. Lohman, Administrators, C.T.A. v. Commissioner.
Estate of Lohman v. Commissioner
Docket No. 5170-69.
United States Tax Court
T.C. Memo 1972-27; 1972 Tax Ct. Memo LEXIS 228; 31 T.C.M. (CCH) 96; T.C.M. (RIA) 72027; February 3, 1972, Filed. Richard J. Concannon, Kelly, Drye, Warren, Clark, Carr & Ellis, New York, N. Y., for the petitioner. Agatha J. Vorsanger, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $232,703.35 and an addition to tax under section 3612(d)(1), I.R.C. 1939, [1] for failure to file an estate tax return in the amount of $88,029.17. The issues for decision are: (1) Whether any additional assessment of estate tax is barred by the statute of limitations contained in section 874(a), or whether under section 874(b) this limitation period is inapplicable because of failure to file an estate tax return. (2) In the event we decide that respondent is not barred by the statute of limitations, whether he correctly determined the value of decedent's two-thirds interest in the estate of her husband, who had predeceased her, and whether petitioner is *230 liable for the additions to the tax set forth in section 3612(d)(1) for failure to file an estate tax return as required by the provisions of section 821. Findings of Fact Most of the facts have been stipulated and are found accordingly. Petitioner is the Estate of Anna A. Lohman, deceased. Manufacturers Hanover Trust Company, which had its principal office in New York, New York, and Genevieve R. F. Lohman, who resided in Brooklyn, New York at the time the petition in this case was filed, are duly qualified and presently acting Administrators, C.T.A., of the Estate of Anna A. Lohman. They were granted letters of administration on January 19, 1965, by the Surrogate's Court of Kings County, New York. Anna A. Lohman, the decedent, died on December 11, 1952. The executor of her estate was her son, J. Fred Lohman, Jr., who qualified and acted as such until his death on December 8, 1964. By a letter dated March 10, 1954, J. Fred Lohman, Jr., requested a 6 months' extension of time within which to file the Federal estate tax return for decedent's estate. The letter set forth as the basis of the request that J. Fred Lohman, Jr., had suffered a nervous breakdown following the death *231 of his mother, Anna A. Lohman, and as a result had a tremendous backlog of work. An extension of time within which to file the Federal estate tax return was granted until September 11, 1954. [2]
J. Fred Lohman, Jr., filled out, by hand, and signed under date of September 13, 1954, U.S. Treasury Department, Internal Revenue Service Form 706 (hereinafter referred to as the Document) in connection with the Estate of Anna A. Lohman. On the top of the first page of the Document were the handprinted words, "Tentative Return." The heading of the Document was filled in as well as the general information section which, among other things, stated that decedent's spouse had predeceased her and that the date of his death was November 15, 1940. Schedules reflecting decedent's ownership of *232 real estate, stocks and bonds, and mortgages, notes and cash at the time of her death were completed. However, the remaining schedules were left blank and there was no computation of tax. The return contained the information that the estate was not represented by an attorney. The Document omitted the listing of a two-thirds interest of decedent in the estate of her husband, J. Fred Lohman, who had predeceased her. On September 13, 1954, the Document was submitted to and received by the district director of internal revenue for the Borough of Brooklyn, City and State of New York. The Document was accompanied by a payment in the amount of $150,000. An examination of the estate tax liability of the Estate of Anna A. Lohman was made by Alfred Yatkowitz, a revenue agent of the Internal Revenue Service. Based upon 98 the information contained in the Document submitted, the revenue agent computed the estate tax liability to be $110,121.99 after allowance of credit for State estate, inheritance or succession taxes. However, this claimed credit was disallowed in the amount of $9,291.33. Under date of September 10, 1957, the district director of internal revenue at Brooklyn, New York *233 addressed a letter to J. Fred Lohman, Executor, in regard to the Estate of Anna A. Lohman, which stated in part as follows: Estate of Anna A. Lohman Date of death: 12/11/54 (sic) Reference is made to the Federal estate tax return filed for the above-named estate. The amount of the gross estate tax is hereby determined to be $119,413.32. Credit against such gross tax for State inheritance or estate tax may be allowed in the amount of $9,291.33 (the maximum authorized under section 813(b) of the Internal Revenue Code), provided documentary evidence in support thereof is submitted as required by section 81.9, as amended, Estate Tax Regulations 105. * * * Interest in the amount of $5,269.55 was added to the gross estate tax of $119,413.32 and the amount of $25,317.13 was refunded to decedent's estate on October 17, 1958. Following the death of J. Fred Lohman, Jr., on December 8, 1964, and issuance of letters of administration to the current administrators of the Estate of Anna A. Lohman, a letter dated February 17, 1965, was sent to the district director of internal revenue at Brooklyn, New York, by the law firm which represents the current administrators. *234 This letter referred to the "distributive share due to the decedent * * * as legatee under the Last Will and Testament of J. Fred Lohman (date of death: 11/15/40 * * *)." and stated: My examination of the 706 return filed in the above estate does not reflect the inclusion of any of the foregoing assets therein. The 706 return was prepared and filed by Mr. J. Fred Lohman, Jr. who was the sole executor of the estate of said Anna Adeline Lohman. The said return was audited in 1957 and all assessments have been paid, - as your records no doubt will disclose. Mr. J. Fred Lohman, Jr. was not represented by counsel either in the preparation, filing or auditing of the said 706 return in said Estate of Anna Adeline Lohman. By reason of the fact that there were unadministered assets in said estate, as well as the estate of J. Fred Lohman (who died 11/15/40) an application was made by my clients for the issuance of letters of administration with the will annexed. Said application was granted by the Surrogate of the County of Kings and letters of administration with the will annexed were issued to Genevieve R. F. Lohman, the widow of J. Fred Lohman, Jr., jointly with the Manufacturers *235 Hanover Trust Company. Both administrators qualified and are now acting in said capacities. All assets of the Estate of Anna Adeline Lohman (now in the name of said estate or to be acquired by it as the distributive share due to said decedent from the estate of J. Fred Lohman who died November 15, 1940) constitute a part of the gross estate of G. Fred Lohman, Jr. who died December 8, 1964. J. Fred Lohman died on November 15, 1940, and his wife, Anna A. Lohman, and son, J. Fred Lohman, Jr., were named coexecutors of his estate. AU.S. Treasury Department, Internal Revenue Service Form 706 Estate Tax Return was prepared and signed by J. Fred Lohman, Jr., for the Estate of J. Fred Lohman. The form 706 was filled out by hand and had the word, "Tentative" handprinted in ink across the top of the first page. There was no date shown by the signature but the form 706 was received by the collector of internal revenue, Brooklyn, New York (now the district director of internal revenue) on May 15, 1942. At that time the form 706 had a space for certification by a notary that the return was "sworn to and subscribed" with a space for the date to be filled in. The form 706 was not notarized. A *236 second form 706, Estate Tax Return, was completed by hand and in ink, signed and sworn to by J. Fred Lohman, Jr. under date of September 14, 1942, and received by the collector of internal revenue, Brooklyn, New York on September 14, 1942. Respondent in his notice of deficiency mailed to petitioner on July 16, 1969, determined that no estate tax return was filed for the Estate of Anna A. Lohman. The deficiency notice therefore set forth all amounts respondent considered to be assets and deductions of the estate. The notice of deficiency listed total assets of the estate as of the date of death of a value of $1,143,729.30. The only item included in 99 these assets which had not been included in the assets of the estate as determined by the revenue agent prior to the mailing by the district director of internal revenue to J. Fred Lohman, Jr., executor, of the letter dated September 10, 1957, was "Interest in Estate of J. Fred Lohman" valued at $648,887.20. Opinion Section 821(a)(1)[3] requires the executor of an estate to file a return in any case where the gross estate exceeds the amount of the specific exemption provided in section 812(a). Section 81.63, Regs. 105, requires *237 that a return on form 706 be filed within 15 months after the date of death except where an extension of time for filing is granted. Section 874[4] bars the assessment and collection of any estate tax after the expiration of 3 years after the return is filed except in the case of a false or fraudulent return or in the case of a failure to file a return, in which case assessment and collection may be had at any time. In the *238 case of any failure to make or file a return, or late filing of the return, section 3612(d)(1)[5] provides for an addition to tax of an amount not to exceed 25 percent except that the addition for late filing does not apply if the late filing is due to reasonable cause. *239 Respondent contends that since the form 706 filed on September 13, 1954, was marked, "Tentative Return," and contained incomplete and fragmentary information, it was not a return within the meaning of sections 821 and 874. Respondent states that the filing of the incomplete document is tantamount to filing no return at all, and therefore, the statute of limitations never began to run. Petitioner takes the position that the tentative return filed represented a good-faith effort to comply with the provisions of the law and that the information contained therein was sufficient to allow the Commissioner to compute and assess the tax on decedent's estate. Because of the number of "tentative returns" filed for the year 1918, there are numerous old cases dealing with "tentative returns." We consistently held that a "tentative return" did not commence the running of the period of limitations. Dallas Brass & Copper Co., 3 B.T.A. 856 (1926); Matteawan Manufacturing Co., 4 B.T.A. 953 (1926); and Corona Coal & Coke Co., 11 B.T.A. 240 (1928). Some United States District Courts held to the contrary. See Brandon Corporation v. Jones, 33 F. 2d 969 (E.D.S.C. 1929), *240 reversed on confession of error 42 F. 2d 1016 (C.A. 4, 1930) and White v. Hood Rubber Co., 33 F. 2d 739, 740 (C.A. 1, 1929), reversed 280 U.S. 453 (1930) and cases there discussed.[6]
There was a conflict on the issue in the United States Courts of Appeals which the 100 Supreme Court resolved in the case of Florsheim Bros. Co. v. United States, and its companion case, White v. Hood Rubber Co., 280 U.S. 453 (1930). [7] The Court, in holding that the period of limitations commenced from the date of filing of the completed return rather than from the date of the tentative return, observed that the form of the tentative return in that case furnished no data upon which the Commissioner could make a determination, assessment, or recomputation of the tax. The Court recognized at p. 462: It may be true that the filing of a return which is defective or incomplete under section 239 is sufficient to start the running of the period of limitation; and that the filing of an amended return does not toll the period. But the defective or incomplete return purports to be a specific statement of the items of income, deductions, and credits *241 in compliance with section 239. And, to have that effect, it must honestly and reasonably be intended as such. * * * *242 The fact that the return was a "tentative return" was deemed of no significance, the critical issue being whether the return contained sufficient information to apprise the Commissioner of the items of income, deductions and credits so as to enable him to determine or assess the tax. Florsheim Bros. Co. v. United States, supra, at p. 464. The current state of the law as to whether a "tentative return" will commence the running of the period of limitations is most cogently set forth in 10 Mertens, Law of Federal Income Taxation, sec. 57:14, p. 31: The filing of a tentative return by a taxpayer who obtains an extension of time for the filing of the required return does not ordinartly start the running of the statute of limitations. However, whether a so-called "tentative" return starts the limitation period running depends upon the completeness of the return. If in fact the return is sufficiently complete to permit the Commissioner to compute and determine the tax, it should start the statute even though it is labeled "tentative." This distinction has not always been fully *243 appreciated in the decisions; it is founded upon the basic consideration that the statute should start running when the Commissioner has substantially complete information. Both respondent and petitioner cite a myriad of cases in support of their respective positions, most of which we find readily distinguishable on their facts from the case now before us. For the most part the cases cited by petitioner are fraud cases in which the years in issue were barred absent respondent's proof of fraud. The cases cited by respondent in which it is held that no return was filed so as to start the running of the period of limitations, involve returns containing either no information or information insufficient to allow the Commissioner to assess the tax. There is no case cited, nor are we able to find a case, except where fraud was found, wherein the court held that a tentative return containing the quantum of information present in this case would not commence the running of the period of limitation. [8] See F. A. Gillespie, 20 B.T.A. 1068, 1082 (1930), 101 in which a so-called "temporary return" which was not complete was held to start the running of the statute of limitations. *244 While the tentative return filed herein was imperfect, it was not so incomplete, fragmentary, or inadequate as to fail to apprise the Commissioner of sufficient information upon which he could compute and assess the tax. As was announced by the Supreme Court in Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180 (1934): Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such ( Lucas v. Pilliod Lumber Co., 281 U.S. 245) and evinces an honest and genuine endeavor to satisfy the law. This is so though at the time of filing the omissions *245 or inaccuracies are such as to make amendment necessary. * * * The form 706 marked, "tentative return" filed on behalf of the Estate of Anna A. Lohman included virtually all of decedent's assets with the exception of certain mortgages and bank accounts valued at $86,677.50 which were added to the gross estate by the revenue agent and the undistributed two-thirds interest in her deceased husband's estate. The general information section of the form 706 clearly reflects the name of decedent's husband and the date of his death. From all the facts in this record our conclusion is that the omission of the undistributed two-thirds interest in the Estate of J. Fred Lohman was one of honest error on the part of the executor, J. Fred Lohman, Jr. The appropriate place for reflecting an interest in an undistributed estate would be Schedule F, "Other Miscellaneous Property," of the form 706. However, neither the instructions for Schedule F, nor for any other part of form 706, mention an undistributed interest in an estate. The nature of an undistributed interest in an estate is such that a layman uneducated in the fine points of property or tax law might not consider it to be property belonging *246 to the beneficiary since it has never been received by the beneficiary. We by no means intend this to excuse the executor who is remiss in making an omission such as that appearing in this case, but advance this as a reasonable explanation for such an omission having been made. The bar of the statute of limitations would be meaningless if it were lifted every time there was a mistake in a return since the principal situation where the bar is effective is where there is a mistake in the return. Respondent in this case has not asserted fraud. If the return is false and fraudulent, there is no limitation on the period for assessment and collection of a deficiency. Therefore, respondent is protected in the case of a fraudulent return. Finally, we must conclude that J. Fred Lohman, Jr., evidently considered the return filed by him on September 13, 1954, as a complete return, notwithstanding the fact that it had been denominated "Tentative Return." He did not subsequently file a complete return for the Estate of Anna A. Lohman as he did in the case of the Estate of J. Fred Lohman 3 months after having filed a so-called "Tentative Return" for that estate. The fact that the form 706 filed *247 for the Estate of Anna A. Lohman contained the information ordinarily contained in an estate tax return is further shown by the fact that even though the return was marked "Tentative Return," it was treated as a complete return by respondent's agents in 1957 in auditing that return and in dealing with J. Fred Lohman, Jr., as Executor of the Estate of Anna A. Lohman. We are of the opinion that the information contained in the form 706 filed on behalf of the Estate of Anna A. Lohman was substantial and sufficient to enable the Commissioner to determine and assess the tax. Florsheim Bros. Co. v. United States, supra, and Zellerbach Paper Co. v. Helvering, supra. We conclude, therefore, that the form 706 filed on behalf of the Estate of Anna A. Lohman constituted a return. Since the period of limitations commenced to run on the date of its filing, September 13, 1954, respondent is now barred to assert any deficiency against the Estate of Anna A. Lohman. Since we conclude that a timely return was filed, there is no addition to the tax under section 3612(d)(1). Since any deficiency would be barred by the statute of limitations, the question of whether respondent *248 properly valued the interest of decedent in the estate of her husband becomes moot. Decision will be entered for petitioners. 102 Footnotes
1. All references are to the Internal Revenue Code of 1939 unless otherwise indicated. Since Anna A. Lohman died on December 11, 1952, this case is governed by the 1939 Code.↩
2. Respondent's letter granting the extension of time contained the following information: The extension of time for filing the return does not operate to extend the time for payment of the tax. The tax may be estimated and deposited with this office to prevent the accrual of interest which attaches at the rate of 6 percent per annum from the due date until paid. September 11, 1954, was a Saturday.↩
3. SEC. 821. RETURNS. (a) Requirement. - (1) Returns by executor. - In all cases where the gross estate at the death of a citizen or resident exceeds the amount of the specific exemption provided in section 812(a), the executor shall make a return under oath in duplicate, setting forth (1) the value of the gross estate of the decedent at the time of his death; (2) the deductions allowed under section 812; (3) the value of the net estate of the decedent as defined in section 812↩; and (4) the tax paid or payable thereon; or such part of such information as may at the time be ascertainable and such supplemental data as may be necessary to establish the correct tax.
4. SEC. 874. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. (a) General Rule. - Except as provided in subsection (b) the amount of estate taxes imposed by this subchapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of three years after the return was filed. (b) Exceptions. - (1) False return or no return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. ↩
5. SEC. 3612. RETURNS EXECUTED BY COMMISSIONER OR COLLECTOR. * * * (d) Additions to Tax. - (1) Failure to file return. - In case of any failure to make and file a return or list within the time prescribed by law or prescribed by the Commissioner or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax: Provided, That in the case of a failure to make and file a return required by the law, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, if the last date so prescribed for filing the return is after August 30, 1935, then there shall be added to the tax, in lieu of such 25 per centum: 5 per centum if the failure is for not more than 30 days, with an additional 5 per centum for each additional 30 days or fraction thereof during which failure continues, not to exceed 25 per centum in the aggregate. (2) Fraud. - In case a false or fraudulent return or list is willfully made, the Commissioner shall add to the tax 50 per centum of its amount.↩
6. The cases cited were given rise to by an unusual fact situation worth noting herein. The Revenue Act of 1918 was not approved until February 24, 1919. Sec. 241(a) of that Act required that corporate returns on the basis of calendar years be made on or before the 15th day of March. The form of return prescribed by theCommissioner, known as form 1120, was an elaborate document, and it was obvious that many corporations would be unable to prepare their returns in the short interval between February 24 and March 15, 1919. An extension of time could have been granted in each case, but sec. 250(a) of the Act provided that the time for payment of the tax would be postponed until the expiration of the period of extension. The exigencies of government made it undesirable to have the first installment of taxes postponed. As a curative device the Commissioner established a procedure whereby the taxpayer could file a form 1031-T entitled, "Tentative Return and Estimate of Corporation Income and Profits Taxes and Request for Extension of Time for Filing Return," which was to be accompanied by the remittance of the taxpayer's estimated taxes. The extension of time would be granted and the form 1120 would be filed at the expiration thereof. Thus formed the Pandora's Box from which arose the issue of whether the period of limitations commenced to run by the filing of the so-called "tentative return," or by the later filing of the so-called "completed return." Florsheim Bros. Co. v. United States, 280 U.S. 453↩ (1930). 7. In Florsheim Bros. Dry Goods Co. v. United States, 29 F. 2d 895 (C.A. 5, 1928), the Fifth Circuit held that the period of limitations commenced to run from the date of filing of the completed return rather than from the date of the tentative return. In White v. Hood Rubber Co., 33 F. 2d 739↩ (C.A. 1, 1929), the First Circuit ruled that the period of limitations commenced to run with the filing of the tentative return.
8. In Estate of Henry Wilson, 2 T.C. 1059↩ (1943), no estate tax return was filed by the Estate and based upon information furnished by the taxpayers a return was prepared by respondent [Commissioner] under the provisions of sec. 3176 of the Revised Statutes as amended by sec. 1103 of the Revenue Act of 1926. While no fraud penalty was asserted by respondent, we concluded that had the taxpayers filed the return prepared by respondent, we would have to hold that the return was false and fraudulent with the intent to evade tax.